UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

GAYE MORGENTHALER,

       Plaintiff,

v

CITY COUNCIL OF CHELSEA, et al,

       Defendants

Judge David M. Lawson
Magistrate Judge Kimberly G. Altman
No. 23-cv-12151

_____

Gaye Morgenthaler, *Pro Se*

James A. Fink (P40386)
Fink & Fink PLLC
*Attorney for Defendants, Chelsea City Council, Pacheco, Evans Fink, Public Safety Strategic Planning Group, Ladio, Iannelli and Ruddock*

Timothy J. Mullins (P28021)
Travis M. Comstock (P72025)
Lindsay P. Hazen (P85861)
Giarmarco, Mullins & Horton, P.C.
*Attorneys for Defendants Eyster, Wilkinson, van reesema, Helber, Kapolka and Angel*

Brian M. Schwartz (P68018)
Miller Canfield, Paddock and Stone, P.L.C.
*Attorney for Defendant Southeast Michigan Criminal Justice Policy Research Project "SMART"*

# **PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff hereby moves pursuant to Federal Rule of Civil Procedure 65(a) for a preliminary injunction prohibiting Defendants from

(1) forbidding Chelsea Police Officers to speak with Gaye Morgenthaler, and

(2) committing any further actions related in any way to the Chelsea "Public Safety Strategic Planning Group."

Such an injunction would continue until this Court has an opportunity to issue a final judgment on the merits.

Plaintiff Gaye Morgenthaler makes this motion for a preliminary injunction on the grounds that

(1) Plaintiff has already demonstrated a likelihood of succeeding in showing a pattern and practice of fraud, with other crimes likely to be proven as well;

(2) Plaintiff is likely to suffer irreparable harm in the absence of the relief requested because *how can I prove my case if Chelsea Police have been ordered not to talk with me?*

Moreover, I am told the draft of the new code of conduct for Chelsea Police officers states that *any officer who criticizes Chelsea's Chief of Police or the Chelsea Police Department can be terminated.*

(3) the harm that I will suffer if the preliminary injunction is denied *as well as the harm to my fellow residents in Chelsea*, outweighs the harm Defendants are likely to suffer as a result of a preliminary injunction; and

(4) the public interest clearly favors issuing this preliminary injunction.

## **PRELIMINARY STATEMENT**

The violations of the civil rights of Chelsea citizens <u>and</u> our police officers has now become jaw-dropping.

I don't know whether Defendant Jane Pacheco gave the above-mentioned orders which infringe Chelsea police officers' First Amendment rights and my right to pursue evidence supporting my complaint as well as honest governance for which I pay taxes.

It is also possible the orders to muzzle Chelsea police officers originated with Defendant Mariah Evans Fink or Chelsea Police Chief Kevin Kazyak.

But whoever gave the orders, they are clearly intended to interfere with my previously filed complaint [ECF No. 8].

No matter who started it, I believe one or more of the above-named defendants — each of whom swore an oath to the U.S. Constitution before assuming their various positions — abrogated their oaths and broke U.S. law when they muzzled our police officers <u>and</u> targeted me.

This is an appalling example of the "police code of silence," sometimes referred to as the "blue code," and it's a version of what the U.S. Department of Justice inveighed against when they issued their report on Chicago's police corruption in 2017.

Honest officers have been reprimanded and will be terminated in the future for speaking out about illegal actions by the Chelsea Police Department.

How am I as plaintiff to gather the *corpus delecti* I will need to prove my case if potential whistleblowers are intimidated by the specter of losing their jobs when they speak out???

Moreover, other people associated with Chelsea City Hall are cooperating in this effort to hide the truth and they are surely liable as well. Defendant Public Safety Strategic Planning Group (SPG) is now holding public meetings where they allow public comment but then force citizens to leave the room so the SPG can go into private session.

No minutes of any SPG meeting have been made available to the public over the past year, nor have any of the SPG meetings been recorded by anyone but me. These are <u>clear</u> infractions of the Open Meetings Act of Michigan (OMA).

For such illegal behavior, we citizens would normally file a complaint with the circuit court, as mandated by Michigan's OMA.

But the flagrant violations of the OMA in this case are so interwoven with my amended complaint [ECF No. 8] that it seems the logical place to protest the SPG's illegal behavior is here in federal court.

I tried with my complaint of November 27th 2023 to warn any co-conspirators that it was time to 'fess up and leave [ECF No. 8], as Defendant Eyster appears to have done.

Unfortunately, the ringleaders of this gang have doubled down on their increasingly appalling behavior.  I am now in the process of amending my prior complaint [ECF No. 8] to include specific claims against the offending individuals <u>and</u> new information given me by my fellow Chelsea citizens.

## FACTUAL BACKGROUND

Over the past two years, I have taken dinner multiple times to the Chelsea Police Department on Sunday nights.  I have come to know several of our police officers by name and even by their food preferences.

These police officers are not abstractions to me.  They're real people with real hopes and dreams.  Real people to whom I'm deeply grateful for their willingness to protect my family and my town.

Meanwhile, the City of Chelsea has been treating police officers like dirt for the past four years.

Five of our older police officers quit in 2022 before retirement age — including our former police chief — because those officers "didn't want to take illegal orders" from Defendant Pacheco, the mayor of Chelsea.

Chelsea doesn't offer pensions for our officers. So our prior police chief recruited older police officers who had reached retirement from other police departments and already had their pensions. Many of those officers still enjoyed working in a congenial location like Chelsea where the crime was low and the residents law-abiding.

Officers seemed to especially like the ability to keep their certifications valid by serving part-time for a minimum of 540 hours a year. (I believe that is the number of hours required to maintain certification by the Michigan Commission on Law Enforcement Standards).

So I did worry when we moved here because many of our police officers were in their 60s and I assumed they might not be able to chase down criminals.

When I heard that Defendant Mayor Pacheco was on record asking to hire young police, it sounded like a good idea.

But other Chelsea citizens made me realize that what Defendant Pacheco *really* wanted were young police officers who would take orders without question.

Indeed, our police department is so short-staffed that we are sharing one police officer with the town of Pinckney, north of Chelsea.  Another police officer Chelsea recently hired was still at the police academy at the time of her hiring!

Worse yet, I'm told Chelsea is operating with a skeleton police force despite the fact the older officers are only being assigned a few shifts per month.

It's well-known that police officers are in short supply nationwide after being so vilified in 2020.  So I don't know whether hiring police officers before they graduate is now standard operating procedure.

But I <u>do</u> know it's easier to overawe new employees than experienced employees.

And EEOC regulations have almost certainly been violated in Defendant Pacheco's drive to recruit young police officers who are more likely to follow illegal orders than older, experienced officers. I suspect Chelsea is fortunate no potential hirees have filed suit for age discrimination.

However, the leadership of Chelsea Police Department is so bad, I'm told police officers are filing internal lawsuits against one another.

Is that normal in a small town police department???

So here's the bottom line:

The bolsheviks running Chelsea and dragging us to anarchy don't have to "defund the police" if they can break Chelsea's thin blue line.

## ARGUMENT

### I. The Plaintiff Has Made the Required Showing for a Preliminary Injunction

A request for preliminary injunctive relief must be evaluated under the four-factor test of *Winter v. NRDC,* 555 U.S. 7,20 (2008). *Planned Parenthood Ass'n of Utah v. Herbert.* 828 F .3d 1245,1252 (10th Cir. 2016).

For the Court to grant me a preliminary injunction, I must establish:

(a) I am likely to succeed on the merits;

(b) I am likely to suffer irreparable injury unless the preliminary injunction is granted;

(c) the balance of equities tips in my favor

(d) the grant of an injunction is in the public interest.

828 F .3d at 1252.

It should be noted that when the defendants are government actors, the last two factors (c) and (d) are considered together. *Ken v. Holder, 556 U.S. 416, 435 (2009)*

### A. I Am Likely to Prevail on the Merits.

It is sufficient to obtain a preliminary injunction for a movant to present a *prima facie* case on the merits. *Planned Parenthood Assn of*

*Utah v. Herbert,* 828 F.3d 1245, 1252 (10th Cir. 2016). 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE U.S. 2948.3 (2014) ("All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning.")

In the First amendment context, this factor is often determinative because of the seminal importance to society of the interests at stake. *Verlo v. Martinez,* 820 F.3d 1113, 1126 (10th Cir. 2016); *see Dombrowski v. Pfister,* 380 U.S. 479, 486 (1965).

In order to obtain a preliminary injunction, plaintiffs must show that they are "substantially likely" to prevail. *Harmon v. City of Norman,* 981 F3d. 1141, 1146 (10th Cir. 2020).

The fact that police whistleblowers have been enjoined against talking to me if they want to keep their jobs shows a clear violation of their First Amendment rights as well as interfering with my right to assemble a *corpus delicti* to prove my case.

Or as we ordinary Americans would say,

*People with nothing to hide hide nothing.*

## B. <u>Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief</u>

The second *Winter* factor requires me to show I am likely to suffer irreparable harm if preliminary injunctive relief is not granted. *Benisek v. Lamone.* 138 S. Ct. 1942, 1944 (2018).

The violation of a First Amendment right constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("[T]he temporary violation of a constitutional right itself is enough to establish irreparable harm."); *Heideman v. S. Salt Lake City,* 723 F.3d 1114, 1145 (10th Cir. 2013); *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001("When an alleged constitutional right is involved, most courts hold that no further evidence of irreparable injury is necessary.")

In my case, it is not my First Amendment right that is being infringed but that of the whistleblowers who enabled me to understand the criminal acts being committed by Chelsea City Hall.

Again, how am I to prove my case, to assemble the *corpus delicti*, if all witnesses to Chelsea's illegal activities have been ordered to remain silent or be terminated?

### C. The Balance of Equities Favors the Plaintiff

The third *Winter* factor, whether the balance of the equities favors the moving party, is considered together with the fourth factor, whether an award of a motion for preliminary injunction would serve the public interest, when Government is the opposing party. *Ken,* 556 U.S. at 435.

The protection of individual constitutional rights always serves the public interest. *Free the Nipple-Fort Collins v. City of Fort Collins,* 916 F.3d 792, 807 (10th Cir. 2018); *Award v. Ziriax,* 670 F.3d 1111, 1132 (10th Cir. 2012).

My interest in free association and to petition the government for the redress of grievances guaranteed by the First Amendment outweighs the Defendants' interest in getting my case dismissed.

### D. The Issuance of a Preliminary Injunction is in the Public Interest

The public interest would certainly be served by granting preliminary relief in this case. "[T]he public interest…favors plaintiffs'

assertion of their First Amendment rights." *Elam Constr., Inc. v. Regional Trans. List.,* 129 F.3d 1343, 1347 (10th Cir. 1997); *see AT&T Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1427 n. 8 (3rd Cir. 1994); "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."

I am asserting the First Amendment rights of whistleblowers without whom I probably don't have a prayer of proving my case, as well as my right to associate with them and their right to associate with me.

## II. A Minimal Bond Amount is Reasonable

Several of the entities mentioned above — Chelsea City Council, Defendant Pacheco, Defendant Mariah Evans Frank and Chelsea Police Chief Kevin Kazyak — all receive compensation from the City of Chelsea.

Thus they owe a duty of care to the citizens of Chelsea. They should *not* be trying to cover their backsides by gagging other Chelsea city employees.

Thus I believe any bond required at this point should be minimal because the only action required of the entities mentioned above is to rescind the gag orders being imposed upon Chelsea Police and to halt the work of Defendant SPG until the Court has had time to examine with the SPG is actually operating within the law.

## III. Plaintiff Should Be Provided with an Opportunity to Conduct Expedited Discovery

The fact that Chelsea police officers have been ordered not to talk with me, plus the new orders being drafted by the Defendant Public Safety Strategic Planning Group — to wit, that Chelsea police who criticize the Chelsea Chief of Police or the Chelsea Police Department can be terminated — suggests time is of the essence.

Slapping a gag order on police officers who are paid in part by my tax dollars is clear evidence of Defendants' malfeasance. Expedited discovery would aid the Court in rendering a decision on this injunction.

## **CONCLUSION**

For the foregoing reasons, I implore this Court to grant the injunctive relief I request, approve security for minimal dollars, provide me as Plaintiff with an opportunity to conduct expedited discovery, and order such further relief as this Court deems appropriate.

DATED: March 21st, 2024

                                               Gaye Morgenthaler,
                                               Plaintiff