UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYE MORGENTHALER,

       Plaintiff,

v.

CHELSEA CITY COUNSEL, JANE
PACHECO, MARIAH FINK, PUBLIC
SAFETY STRATEGIC PLANNING
GROUP, SOUTHEAST MICHIGAN
CRIMINAL JUSTICE POLICY
RESEARCH PROJECT, JOANNE
LADIO, TONY IANNELLI, BILL
RUDDOCK, JAMES EYSTER, ERIC
WILKINSON, KRISTIN VAN
REESEMA, JULIE HELBER, MIKE
KAPOLKA, NICK ANGEL, and JOHN
DOES,

       Defendants.

Case No. 2:23-cv-12151
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 14, 20, 22)
AND
DENY PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT (ECF No. 26)
AND
DENY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(ECF No. 31)** [1]

---

[1] Upon review of the parties' papers, the undersigned deems these matters
appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D.
Mich. LR 7.1(f)(2).  A notice of determination without hearing was filed on May
24, 2024.  (ECF No. 37).

1

I.      Introduction

This is a civil rights case.  Plaintiff Gaye Morgenthaler (Morgenthaler) has sued the above-captioned defendants on claims related to governance within the City of Chelsea and its schools.  She alleges that defendants are liable for deprivations of constitutional rights, conspiracy, program fraud, mail fraud, wire fraud, racketeering, and corruption.  (ECF No. 8, Amended Complaint).  For relief, she asks the Court to "issue an injunction to halt this fraud," and "appoint a magistrate to clean out the corruption in Chelsea."  (*Id.*, PageID.38).  All pretrial matters have been referred to the undersigned.  (ECF No. 7).

Before the Court are the following motions:

- Motion to Dismiss by Chelsea City Counsel, Mariah Fink (Fink), Tony Iannelli (Iannelli), Joanne Ladio (Ladio), Jane Pacheco (Pacheco), Public Safety Strategic Planning Group (SPG), and Bill Ruddock (Ruddock), (ECF No. 14);[2]

- Motion to Dismiss by Southeast Michigan Criminal Justice Policy Research Project (SMART), (ECF No. 20);

- Motion to Dismiss by Nick Angel (Angel), James Eyster (Eyster), Julie Helber (Helber), Mike Kapolka (Kapolka), Kristin Van Reesema (Van Reesema), and Eric Wilkinson (Wilkinson),

---

[2]Fink is an attorney for the city of Chelsea, Iannelli and Ruddock are city counsel members, Pacheco is the mayor of Chelsea, and Ladio is a member of the Chelsea Human Rights Commission.

2

(ECF No. 22);[3]

- Motion for Leave to File an Amended Complaint by Morgenthaler, (ECF No. 26); and

- Motion for Preliminary Injunction by Morgenthaler, (ECF No. 31).

For the reasons that follow, the undersigned RECOMMENDS that defendants' motions to dismiss be GRANTED and that Morgenthaler's motions be DENIED. If adopted, the case would be dismissed.

## II.    Allegations

Morgenthaler's complaint is a sprawling narrative with many perceived deprivations of law, but no connection of the facts alleged to the statutes cited under the "Basis for Jurisdiction." She lists no explicit legal claims after her narrative. What follows is what the undersigned could glean from the amended complaint, giving it a liberal reading.

Morgenthaler says she is resident of Chelsea, Michigan where she is raising a young child. (ECF No. 8, PageID.28). Chelsea, which used to be a "quaint town" with its own police department and "95% white" demographics, has been the victim of a "local gang takeover" according to Morgenthaler, causing a rise in

---

[3] Angel is the principal of Chelsea High School, Eyster is trustee of the Chelsea School Board, Helber is former superintendent of the Chelsea School District, Kapolka is the current superintendent, Van Reesema is a member of the Chelsea Public Safety Task Force, and Wilkinson is president of the Chelsea School Board.

police turnover and call-outs.  (*Id.*).  The "gang members" are said to be a new mayor, other city officials, and the Chelsea School Board and school administrators.  (*Id.*, PageID.29).

Morgenthaler complains that defendants' actions have caused crime to run rampant in the schools, among both students and staff, including theft, drug-dealing, vaping, on-campus sex, pornography viewing on school computers, and rapes.  (*Id.*).  One of the causes of these problems is the removal of police officers from school campuses.  (*Id.*).  Another is various cover-ups of wrongdoing.  (*Id.*). Morgenthaler also blames defendants for not allowing teachers to carry firearms and not allowing her to give a presentation on school security.  (*Id.*).

Morgenthaler also alleges that there are "very odd dealings with China in [the] Chelsea school district[,]" which amounts to the recruitment of Chinese students to attend Chelsea High School in exchange for payments of "$10,000 or more" from China, presumably to the school district.  (*Id.*).  She further alleges that Eyster, a member of the Chelsea school board, "may" be a "Chinese Communist Party agent" and that he demanded a school board member apologize for posting an anti-China meme about Covid on her personal Facebook account.  (*Id.*, PageID.30).

Months later, Morgenthaler says that Eyster "tried to abridge [her] First Amendment rights" during the public comment portion of a Chelsea School Board

meeting in June 2022.  (*Id.*).  She was speaking about the elementary school's principal forcing long-time teachers out of their school when Eyster told her to stop talking.  (*Id.*).  However, she pushed back against Eyster and continued on.  (*Id.*).  At the next school board meeting, Eyster spoke about how Chelsea residents must be nice to one another, but Morgenthaler continued to speak out against the "corrupt principal" during school board meetings and the principal was terminated five months later.  (*Id.*, PageID.30-31).

Morgenthaler goes on to describe other occurrences in Chelsea that form the basis of her claims.  She says that police officers are being instructed by the mayor to pull everyone over, (*id.*, PageID.31), that defendants are possibly behind people crashing their vehicles into the police department and a CVS store, (*id.*, PageID.32), that Pacheco, Iannelli, and Ruddock organized and participated in an "illegal protest" for the Black Lives Matter movement, (*id.*), that assaults occurred during the protest that were covered up, (*id.*, PageID.33), and that tickets issued to protestors were dismissed on First Amendment grounds by a Washtenaw County judge who was not named in this lawsuit, (*id.*).  She also complains that tax dollars were spent on falsely portraying Chelsea residents as dissatisfied with the police, (*id.*), and in the creation of reports and the public safety task force, (*id.*, PageID.34).

Next, Morgenthaler alleges that defendants created the SPG, which is said to

operate in private in violation of the Open Meetings Act, and that they hired SMART to conduct police training despite increases in crime in other cities that have followed SMART's guidance. (*Id*.). Morgenthaler says that SPG eventually held a public meeting, which she attended, where attendees were eventually allowed to speak and ask questions despite Ruddock and Iannelli's attempts to silence them. (*Id.*, PageID.34-35). SPG also conducted surveys that were too limited to be of value and could easily have been altered by individuals with opposing views. (*Id.*, PageID.36). Morgenthaler faults Ladio for advising SPG that it did not need to comply with the Open Meetings Act because of its structure, and says that Ladio became irate and shouted at citizens during a SPG meeting, after which she was not seen at future meetings. (*Id.*, PageID.36-37).

In conclusion, Morgenthaler alleges that Pacheco "broke the law," but that the county sheriff's department, the U.S. Marshals, and the FBI were unwilling to do anything about it. (*Id.*, PageID.37). She reiterates that the surveys conducted by SPG were "rigged," that police call-outs have risen, and that defendants are attempting to further subvert the Chelsea police department. (*Id.*, PageID.38). She also complains of illegal migrants that are not being deported. (*Id.*). For relief, she requests that the Court 1) "issue an injunction to halt this fraud" and 2) "appoint a magistrate to clean out the corruption in Chelsea[.]" (*Id.*).

III.    Defendants' Motions to Dismiss

A.    Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

## B.    Discussion

Defendants argue that Morgenthaler has failed to meet the minimum

pleading requirements; that she has failed to state a claim under § 1983; that she

cannot proceed under the criminal statutes she cites in a civil case; and that

SMART is both an improper party and is protected from suit by sovereign

immunity. These arguments will be addressed in turn below.

### 1.    Pleading Requirements

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a

short and plain statement of the claim showing that the pleader is entitled to relief,"

as well as "a demand for the relief sought." The purpose of this rule is to "give the

defendant fair notice of what the claim is and the grounds upon which it rests."

*Twombly*, 550 U.S. at 555 (2007).  The standard established by the Supreme Court

in *Ashcroft v. Iqbal* "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation" or a "sheer possibility that the defendant has acted

unlawfully." *Id.*  As such, a complaint must have more "than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555.  "Rule 8 does not empower [a party] to plead the

bare elements of [a] cause of action, affix the label 'general allegation,' and expect

[the] complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687.

A complaint must be dismissed for failure to comply with Rule 8 if it does

not "contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

at 570).

The undersigned agrees that, with one exception, Morgenthaler has failed to

allege any facts that can be connected to a cause of action she presents.[4]

Morgenthaler has described a series of events caused by elected or appointed

officials and entities within Chelsea, Michigan that have made decisions she very

clearly disagrees with, and which, taking the allegations as true, have had less than

---

[4] The exception is Morgenthaler's allegation that Eyster attempted to abridge her
First Amendment rights by limiting her remarks during the public comment portion
of a Chelsea school board meeting.  (ECF No. 8, PageID.30).  This claim will be
addressed below.

ideal outcomes.  However, she has not sufficiently pleaded that there is recourse at federal law for the events she describes.  Many of her allegations related to conspiratorial actions among the defendants are highly speculative, as she is unsure that defendants were behind them.  (ECF No. 8, PageID.31-32).

Additionally, other allegations, such as the tickets that were dismissed against protestors in Chelsea, have already been handled in state court.  (*Id.*, PageID.32-33).  As such, Morgenthaler cannot challenge those actions here in federal court.  *See Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (explaining that the lower federal courts may not exercise jurisdictions challenging state-court judgments rendered before the district court proceedings commenced).  She also lacks standing to challenge the city's expenditure of taxpayer funds for commissioning reports and task forces, if she does indeed seek to challenge them.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 343-44 (2006) (explaining that tax expenditures do not create a concrete and particularized injury required to have standing to bring suit).  And her allegations regarding fraudulent surveys simply have no ground under federal law.

Furthermore, her requests for an injunction to "halt this fraud" and to appoint a magistrate to address corruption in Chelsea are not supported by any authority.  The undersigned is not aware of any authority that would allow it to grant these forms of relief.

10

Because it is impossible to tell what legal claims Morgenthaler raises with regard to her allegations—with the single exception noted above—her claims should be dismissed for failing to meet the minimum pleading requirements under Rule 8.

### 2.    § 1983 Claim

As noted above, Morgenthaler's allegations are too vague and attenuated to meet the minimum pleading requirements or state a claim, with the exception of her allegation against Eyster.  Morgenthaler alleges that Eyster attempted to interfere with her First Amendment right to speak at a school board meeting when he told her to stop talking.  (ECF No. 8, PageID.30).  Although this allegation does meet minimum pleading requirements, it fails to state a claim against Eyster or the school district for the reasons explained below.[5]

A school board meeting is not a forum for unregulated speech.  It is recognized as a "designated" and "limited" public forum: "designated because the government has intentionally opened it for public discourse, and limited because

---

[5] Morgenthaler is not clear whether she is suing Eyster under his individual or official capacity.  An official capacity claim " 'is not a suit against the official but rather a suit against the official's office.' "  *Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008) (quoting *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989)).  In either event, because Morgenthaler fails to state a constitutional violation, she does not state a claim against Eyster in either capacity.  *See Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 994 (6th Cir. 2017) ("The absence of a clearly established right spells the end of this *Monell* claim.").

the State is not required to . . . allow persons to engage in every type of speech in the forum." *Lowery v. Jefferson County Bd. of Ed.*, 586 F.3d 427, 432 (6th Cir. 2009) (internal quotations omitted).  Within such a forum, the government may regulate the time, place and manner of speech so long as the regulation is (1) content-neutral, (2) narrowly tailored to serve a significant governmental interest and (3) leaves open other alternative channels for communication of the information.  *Id.*  A policy prohibiting speech that is "repetitive," "harassing" or "frivolous" is considered narrowly tailored.  *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 433 (6th Cir. 2009).

Morgenthaler alleges that her speech was critical of the principal of a Chelsea elementary school.  However, she does not allege that she was instructed to stop speaking due to the content of her speech, as opposed to some content-neutral reason.  She also fails to allege facts that the attempt to curtail her speech was not narrowly tailored, or that she had no alternative channels through which to communicate her concerns.  Indeed, after asserting her First Amendment right to speak at the school board meeting in response to Eyster's command, Morgenthaler continued to speak, and spoke on the issue at an unspecified number of future school board meetings as well.  (*Id.*).  Eyster's only subsequent action was to speak for seven minutes at the next school board meeting about residents of Chelsea being nice to one another.  (*Id.*).

12

Because Morgenthaler did not allege the elements of a First Amendment claim as laid out above, she fails to state a claim under § 1983 for a constitutional deprivation.

### 3.    Claims Under Other Statutes

Morgenthaler also lists several criminal statutes that, presumably, she alleges defendants have violated.  Her claims under 18 U.S.C. §§ 241-242[6] should be dismissed because the law is clear that neither statute provides a basis for a civil liability.  *Franklin v. Henderson*, 15 F. App'x. 205, 207 (6th Cir. 2001); *Kafele v. Frank & Wooldridge Co.*, 108 F. App'x 307, 308-09 (6th Cir. 2004); *Willing v. Lake Orion Comm. Schs. Bd. of Trustees*, 924 F. Supp. 815, 818 (E.D. Mich. 1996).  These statutes do not give rise to civil actions, and Morgenthaler has no authority to initiate federal criminal prosecutions.  *Franklin*, 15 F. App'x at 207.

Similarly, 18 U.S.C. § 371 and § 666 do not create civil causes of action for Morgenthaler.[7]  *Willing*, 924 F.Supp. at 818 (§ 371 does not create a private right of action); *Ogbolu v. Trustees of Columbia Univ. in City of New York*, No. 21-CV-1697 (JPO), 2022 WL 280934, at *4 (S.D.N.Y. Jan. 31, 2022) (same for § 666, §

---

[6] These statutes criminalize conspiring against a person's constitutional rights, or depriving a person of their constitutional rights under color of law.

[7] Section 371 criminalizes conspiring to commit an offense against, or to defraud the United States or an agency thereof.  Section 666 criminalizes theft or bribery by programs receiving federal funds.

1341, and § 1343), *aff'd*, 2023 WL 2579044 (2d Cir. Mar. 21, 2023), *cert. denied sub nom. Ogbolu v. Trustees of Columbia Univ. in the City of New York*, 144 S. Ct. 101, 217 L. Ed. 2d 27 (2023).  Her claims under 18 U.S.C. §§ 1341-1342 are non-starters as well; both statutes have been recognized as authorizing no civil cause of action.[8]  *Ellison v. JP Morgan Chase Bank*, No. 13-13121, 2013 WL 5913432, at *5 (E.D. Mich. Oct. 31, 2013) (citing cases).

Morgenthaler also cites 18 U.S.C. § 1961, which could be interpreted as asserting a civil claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  However, in addition to the insufficient pleading described above, Morgenthaler fails to allege an "injury to business or property" proximately caused by the defendants' racketeering activity.  *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 563-64 (6th Cir. 2013) (en banc); *see also Sedima*, 473 U.S. at 496 ("[T]he [civil RICO] plaintiff only has standing if, and can only recover to the extent that, [s]he has been *injured* in [her] *business or property* by the conduct constituting the violation.") (emphasis added).  Morgenthaler has not pled any sort of injury along these lines, nor does her complaint include a section regarding injuries.

Finally, Morgenthaler cites Executive Order 13818, which blocks the property of persons involved in serious human rights abuse or corruption. Exec.

---

[8] These are criminal statutes involving federal mail fraud.

14

Order No. 13,818, 82 Fed. Reg. 60,839 (Dec. 20, 2017) (entitled "Blocking the

Property of Persons Involved in Serious Human Rights Abuse or Corruption").

Morgenthaler lacks standing to bring a claim because this Executive Order permits

only the Attorney General, Secretary of the Treasury, and Secretary of State to take

action under its authority. *Id.* at §§ 8-11; *see also Lopez v. First Merchants Corp.*,

No. 2:24-CV-10647, 2024 WL 2116046, at *1 (E.D. Mich. May 10, 2024) (noting

that the Executive Order "expressly disclaims a private right of action.").

Overall, Morgenthaler has failed to state a claim under any of these federal

statutes.

### 4.     Claims Against SMART

SMART has moved separately to argue that it is not the correct entity to be

sued, and that if Morgenthaler had sued the correct entity—Eastern Michigan

University—such suit would be barred by sovereign immunity.  The undersigned

agrees.

Eastern Michigan University's Board of Regents, which acts as its board of

control, is the "body corporate" with the capacity to "be sued" under Michigan

law. MCL 390.555; see Mich. Const. 1963, art. 8, § 6.  SMART could be

dismissed from the case for that reason alone.  *See Ali v. Univ. of Michigan Health*

*Sys.-Risk Mgmt.*, No. CIV.A. 11-13913, 2012 WL 3112419, at *3 (E.D. Mich. May

4, 2012), *report and recommendation adopted sub nom. Carolyn Lee Ali v. Univ.*

15

*of Michigan Health Sys.-Risk Mgmt.*, 2012 WL 3110716 (E.D. Mich. July 31,

2012), *aff'd sub nom. Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*, 523 F.

App'x 319 (6th Cir. 2013) (dismissing suit against University of Michigan Health

System—Risk Management, in part, because "Plaintiff has filed suit against an

entity that is not subject to suit[.]").

Had Morgenthaler sued Eastern Michigan University, her claims would still

fail due to Eleventh Amendment immunity.  Sovereign immunity under the

Eleventh Amendment has only three qualified exceptions: consent; abrogation; and

enjoining a " 'state official' from violating federal law." *Lawson v. Shelby Cnty.,*

*TN*, 211 F.3d 331, 335 (6th Cir. 2000) (quoting *Ex parte Young,* 209 U.S. 123

(1908)).  The first two exceptions are unmet; Eastern Michigan University has not

consented to this suit and Congress has not abrogated its immunity with respect to

any of Morgenthaler's claims.  Under the *Ex parte Young* doctrine, "a suit against a

state officer is not a suit against the state when the remedy sought is an injunction

against an illegal action, for an officer is not acting on behalf of the state when he

acts illegally." *Lawson*, 211 F.3d at 335.  Thus, "[i]njunctive relief is available

under the *Young* exception only against state officers—not the state itself—who

violate federal law." *Id.*  Here, Morgenthaler has named an arm of the state, not a

state official, and her claims therefore do not fall under this exception.

Morgenthaler's claims against SMART should be dismissed for this reason in

addition to the reasons highlighted in previous sections.

IV.    Morgenthaler's Motions

A.    Motion for Leave to File an Amended Complaint

Morgenthaler has moved for leave to file an amended complaint in response to defendants' motions to dismiss.  (ECF No. 26).  Defendants have each responded, (ECF Nos. 27, 28, 29 30), arguing that the motion was brought in bad faith and that any amendment would be futile.  The undersigned agrees.

In her motion, Morgenthaler acknowledges that she "didn't specify the Defendants' guilt claim by claim" (ECF No. 26, PageID.129) and says that her amended complaint would "simply include the claims upon which I'm relying" (*id.*, PageID.133-134).  However, in contravention of Federal Rule of Civil Procedure 15(A)(2) and E.D. Mich. LR 15.1 Morgenthaler has failed to attach a copy of the proposed amended complaint to her motion.  According to the Local Rule, "[f]ailure to comply with this Rule is not grounds for denial of the motion[,]" but it does limit the undersigned's ability to determine whether the proposed amendment would be futile.

Under Federal Rule of Civil Procedure 15(a), motions to amend the complaint are left to the Court's discretion.  *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).  In deciding whether to allow an amendment, "the court should consider the delay in filing, the lack of notice to the opposing party, bad

17

faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). Despite the general rule of liberality with which leave to amend is to be granted, the Sixth Circuit has held that the motion may properly be denied if the amended complaint would not survive a motion to dismiss. *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Here, Morgenthaler's bald assertion that she will connect the parties to her claims is not enough to avoid futility. First, she must connect her *allegations* to her claims in order to satisfy the minimum pleading requirements described above. Second, were she to do so, her claims would still fail for the other reasons described above. The only § 1983 claim that was sufficiently pled—a First Amendment claim against Eyster—would still fail to show that the attempt to regulate her speech was unconstitutional. Her multiple other allegations did not state constitutional violations of any discernable sort. And her citations to several federal criminal statutes, as explained above, do not give rise to causes of action. Therefore, the Court should deny Morgenthaler's motion for leave to amend the complaint, as the proposed amendments would be futile.

### B.     Motion for Preliminary Injunction

Last, the undersigned considers Morgenthaler's motion for preliminary injunction.  (ECF No. 31).

In order to obtain a preliminary injunction, the movant must meet each of the following factors: (1) the movant has a strong likelihood of success on the merits; (2) the movant would suffer irreparable injury absent an injunction; (3) granting the injunction would not cause substantial harm to others; and (4) the public interest would be served by granting the preliminary injunction.  *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  Moreover, "[i]njunctive relief is an extraordinary remedy and is issued cautiously and sparingly."  *Enerco Grp., Inc. v. Deutsch*, No. 1:16CV213, 2016 WL 852572, at *2 (N.D. Ohio Mar. 3, 2016).

Morgenthaler requests injunctive relief "prohibiting Defendants from (1) forbidding Chelsea Police Officers to speak with [her], and (2) committing any further actions related in any way to the Chelsea 'Public Safety Strategic Planning Group.' "  (ECF No. 31, PageID.164).  Regarding the first request, the relief requested is unrelated to her allegations in the amended complaint.  *See Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").  The Court cannot grant relief of that kind "until a [pleading] is filed which asserts a substantive claim

that supports the relief [s]he seeks." *Smith v. Thompson*, 638 F. Supp. 2d 754, 756-57 (E.D. Ky. 2009).

Morgenthaler's request to enjoin SPG activity must be analyzed under the four factors above. Under the first factor, because the undersigned has recommended that all of Morgenthaler's claims be dismissed, she cannot be said to have a likelihood of success on the merits. Under the second factor, she has failed to show irreparable injury because the harm allegedly caused by SPG is speculative and unsubstantiated. *See Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Morgenthaler has not satisfied those factors, either. As explained above, the majority of her allegations, especially regarding SPG, are complaints regarding the legitimate actions of elected or appointed government officials. Morgenthaler moves for relief for other individuals who are not parties to this case. She not only lacks standing to assert their claims, but she has not shown that these individuals—police officers and others—could not bring their own claims for relief. *See, e.g., Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021) (plaintiff failed to show close relationship with nonparties or that anonymous officers are hindered from bringing their own claim(s) for a First Amendment violation in order to obtain

injunctive relief for them).  Thus, her motion for preliminary injunction should be denied.

V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motions to dismiss (ECF Nos. 14, 20, 22) be GRANTED and that Morgenthaler's motion for leave to amend the complaint (ECF No. 26) and motion for preliminary injunction (ECF No. 31) be DENIED.  If adopted, the case would be dismissed.

Dated: July 25, 2024             s/Kimberly G. Altman
Detroit, Michigan               KIMBERLY G. ALTMAN
                        United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n14 of*

21

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 25, 2024.

s/Julie Owens
Acting in the absence of
CAROLYN CIESLA
Case Manager