UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYE MORGENTHALER,

                    Plaintiff,

v.

CHELSEA CITY COUNCIL, JANE PACHECO,
MARIAH FINK, PUBLIC SAFETY STRATEGIC
PLANNING GROUP, SOUTHEAST MICHIGAN
CRIMINAL JUSTICE POLICY RESEARCH
PROJECT, JOANNE LADIO, TONY IANNELLI,
BILL RUDDOCK, JAMES EYSTER, ERIC
WILKINSON, KRISTIN VAN REESEMA, JULIE
HELBER, MIKE KAPOLKA, NICK ANGEL and
JOHN DOES,

                    Defendants.

_____/

Case Number 23-12151
Honorable David M. Lawson
Magistrate Judge Kimberly Altman

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION,
OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING DEFENDANTS' MOTIONS
TO DISMISS, DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY
INJUNCTION AND TO AMEND HER COMPLAINT, AND DISMISSING CASE**

Plaintiff Gaye Morgenthaler filed a complaint (later amended) without the assistance of an

attorney listing a series of grievances against public officials in her hometown of Chelsea,

Michigan. The precise legal causes of action are difficult to discern, but in essence the plaintiff

objects to perceived mismanagement in city government and the school district, and she asks for

the Court to step in to clean things up. The case was referred to Magistrate Judge Kimberly G.

Altman to conduct all pretrial proceedings. Thereafter, the respective defendants filed motions to

dismiss the amended complaint, and the plaintiff filed motions to amend the complaint further and

for a preliminary injunction. Magistrate Judge Altman filed a report on July 25, 2024

recommending that the defendants' motions be granted, the plaintiff's motions be denied, and the

case be dismissed.  The plaintiff filed timely objections to the report and recommendation, and the motions are before the Court for fresh review.

I.

A.

The plaintiff's civil rights claims focus on her allegations of malfeasance and nonfeasance within the city government of Chelsea, Michigan and its school system.  In her first amended complaint, plaintiff Gaye Morgenthaler alleges that she is a resident of Chelsea and is raising a child there.  She says that the town used to be "quaint" and was "95% white," but recently things have changed, and the town has been taken over by a "local gang," comprised of several new elected officials.  According to Morgenthaler, their policies have caused increased staffing turnover and morale issues within the police department.

Some of the plaintiff's allegations concern the management of the school system.  She alleges that the school board and various school administrators have allowed crime to run rampant among students and staff.  These crimes include in-school vaping, in-school viewing of pornography, theft, drug-dealing, and rape.  Morgenthaler laments that, despite these crimes, the school board refuses to allow school resource officers into the school system.  She also says that Superintendent Mike Kapolka sought to recruit students from China to attend the community's high school.

Morgenthaler states that she attempted to present public comment about an issue with a principal of the community's K-2 school during a June 2022 school board meeting, but defendant James "Jason" Eyster, a member of the board, told her to stop talking.  She responded that he should not violate her First Amendment rights, and he stopped interrupting her.  At the next school board meeting, Eyster allegedly gave a seven-minute presentation encouraging community

members to treat each other kindly.  Morgenthaler says that she continued to speak at subsequent meetings and the principal who was the subject of her concerns later was terminated.

Other aspects of Morgenthaler's complaint involve the City's management of the state highway that runs through Chelsea.  She says that police are instructed by the mayor to pull everyone over.  She also speculates that the "gang" of elected officials could be behind an incident where a truck hit the Police Department's headquarters and another incident where a car ran into the community's CVS store.  She also accuses mayor Pacheco, former mayor Melissa Johnson, and city council members Tony Ianelli and Bill Ruddock of participating in an "illegal" Black Lives Matter protest in 2020.  Although the participants did not have a permit to block the highway, she says that the Chelsea Police protected the protestors and did not issue tickets.  Morgenthaler says that these protests continued over the following weeks, and on July 31, 2020, Police Chief Ed Toth warned the participants that the police would issue tickets if they blocked the streets again.  The police later issued tickets to about 29 protestors, but Morgenthaler avers that defendant Pacheco urged Toth to drop the tickets, and the city council later voted unanimously to drop the tickets.  Apparently, this action was ineffective, so the protestors had their tickets dismissed by Washtenaw County District Court Judge Anna Frushour.  Morgenthaler alleges that four police officers and the police chief, as well as several other city staff, resigned shortly thereafter.

Morgenthaler's primary grievance with the defendants, however, appears to be the city council's management of the police department.  She says that Mayor Pacheco used public funds to commission several efforts to portray residents as dissatisfied with the police.  And Morgenthaler has numerous concerns with the work of the City's "Public Safety Strategic Planning Group" (SPG).  First, she alleges that the group meets privately in violation of the Open Meetings Act.  Second, she takes issue with how the SPG or the City Council has hired professors associated

with Eastern Michigan University's "Southeast Michigan Criminal Justice Policy Research Project," which goes by the acronym SMART, to "reimagin[e]" policing in Chelsea.  She alleges that the SPG conducted a community survey, which only yielded thirteen responses.   In a community meeting meant to discuss the SPG, she says, council members Ruddock and Ianelli "yelled" at attendees to be quiet and to stop asking questions of a professor who was presenting.  She characterizes the rest of the meeting as akin to "a bad skit on *Saturday Night Live*" and alleges that the SPG acted in a "clandestine" manner in its scheduling decisions for future public meetings.  She says that City Attorney Mariah Fink and defendant Joanne Ladio, a member of the community's Human Rights Commission, told the SPG that it did not have to permit public comment and was not subject to open meetings laws.  She also alleges that Ladio "yelled" at citizens to "shut up."  She does not provide further details about this meeting.  Morgenthaler also takes issue with how the SPG conducted a second resident survey.

She further complains that 1) "[i]llegal migrants" are being dropped off near a Home Depot store approximately 30 minutes from the town; 2) there is a "tent city" six miles from Chelsea; 3) the SPG is subverting the police department; 4) and the Washtenaw County Sheriff's Department, the U.S. Marshals, and the Federal Bureau of Investigation all have been unable to provide her relief.  She asks the Court for an injunction "to halt this fraud" and to appoint a "magistrate to clean out the corruption" in Chelsea.  The complaint names as defendants: the Chelsea City Counsel, Mayor Jane Pacheco, City Attorney Mariah Fink, the Public Safety Strategic Planning Group, the Southeast Michigan Criminal Justice Policy Research Project ("SMART"), Chelsea Human Rights Commission member Joanne Ladio, Chelsea City Council members Tony Iannelli and Bill Ruddock, Chelsea School Board Trustee James "Jason" Eyster, Chelsea School Board President Eric Wilkinson, former Chelsea School Board Trustee Kristin Van Reesema, former

Chelsea School District Superintendent Julie Helber, Chelsea School District Superintendent Mike Kapolka, Chelsea High School Principal Nick Angel, and thirty John Doe defendants.

As Judge Altman aptly points out, Morgenthaler's amended complaint is a sprawling narrative that fails to connect her factual allegations with specific causes of action or with her claims for relief, which are listed separately.  She cites several laws: 42 U.S.C. § 1983, 18 U.S.C. § 242 (deprivation of rights under color of law), 18 U.S.C. § 241 (conspiracy against rights), 18 U.S.C. § 371 (conspiracy against the United States), 18 U.S.C. § 666 (program fraud); 18 U.S.C. §§ 1341, 1342 (mail and wire fraud), 18 U.S.C. § 1961 (racketeering); Executive Order 13818 (dealing with the property interests of persons involved in serious human rights abuses or corruption), and the First Amendment.  But her amended complaint does not indicate how the defendants' actions as she describes them relate to those laws.

Morgenthaler initially filed her claims in this matter on August 22, 2023.  The Court referred the case to the assigned magistrate judge for all pretrial proceedings.  On November 27, 2023, Morgenthaler filed an amended complaint.  The named defendants collectively have filed three motions to dismiss, one on behalf of City defendants Chelsea City Council, Fink, Iannelli, Ladio, Pacheco, SPG, and Ruddock; another on behalf of SMART; and another on behalf of school system defendants Angel, Eyster, Helber, Kapolka, Van Reesema, and Wilkinson.  ECF Nos. 14, 20, 22.  On February 12, 2024, Morgenthaler filed a motion for leave to file an amended complaint, and on March 21, 2024, she filed a motion for a preliminary injunction.  ECF Nos. 26, 31.

B.

Judge Altman recommended granting each motion to dismiss, concluding that all of the plaintiff's claims were legally deficient.  First, she pointed out that none of the plaintiff's factual allegations, save one, could plausibly support any of her legal theories.  She emphasized that many

of the allegations included in Morgenthaler's amended complaint, even if accepted as true, are speculative in nature, as evidenced by Morgenthaler's admission that she is unsure whether the defendants were behind several of the alleged harms.  She also explained that Morgenthaler's concern about the disposition of tickets issued to protestors in Chelsea cannot support a claim for relief because federal courts generally cannot challenge prior state court judgments.  To the extent Morgenthaler sought to challenge the City's allocation of resources, Judge Altman suggested that her status as a taxpayer does not grant her standing to seek redress in federal court.  Similarly, she stated that the criminal statutes Morgenthaler cited do not create civil causes of action; Morgenthaler had failed to allege any injury to business or property proximately caused by the defendants' racketeering activity, as is required to support a civil RICO claim; and Executive Order 13818 expressly declaims creating a private right of action.

Judge Altman did find that Morgenthaler had sufficiently articulated a First Amendment claim against defendant Eyster for stopping her public comments at a school board meeting, but she held that this claim was legally inadequate because Morgenthaler did not allege that Eyster had interfered with her speech for anything other than a content-neutral reason.  Judge Altman also found wanting Morgenthaler's attempt to plead claims against SMART because 1) the Eastern Michigan University Board of Regents, not SMART, was the appropriate entity under Michigan law to be sued, 2) Morgenthaler's claims against the University were barred by sovereign immunity, and 3) her claims sought injunctive relief but do not name an individual state officer to be enjoined.

Judge Altman also recommended denying Morgenthaler's motion for leave to amend her complaint, observing that she failed to attach a copy of the proposed amended pleading and emphasizing that her assertion that she would connect her factual allegations to her claims did not

suggest that any new complaint would raise non-futile claims.   Finally, Judge Altman recommended denying Morgenthaler's motion for a preliminary injunction.   She explained that some of the relief Morgenthaler requested — namely, an order forbidding the defendants from prohibiting Chelsea Police Officers from speaking with her — was unrelated to the substance of her claims, and the balance — an order barring the defendants from taking further actions related to the Public Safety Strategic Planning Group — was not warranted because Morgenthaler had not demonstrated a likelihood of success on the merits, irreparable injury, or that the relief would be in the public interest.

Morgenthaler lodges ten objections to the Report and Recommendation, to which some of the defendants have responded.

## II.

When a party files timely objections to a report and recommendation, the court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(2), (3) (requiring court review of "any part of the magistrate judge's disposition *that has been properly objected to*") (emphasis added); *United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

But this review is not plenary.  "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues —

factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Several of the plaintiff's objections to the magistrate judge's report do not include specific legal argumentation and therefore do not merit extended discussion. Objections to a magistrate's report and recommendation must be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object," because it does not focus the Court's attention on any specific issues for review, "thereby making the initial reference to the magistrate useless." *Ibid.* Moreover, the plaintiff may not raise new claims or theories not raised previously. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that the Magistrate Judges Act does not permit "parties to raise at the district court stage new arguments or issues that were not presented to the magistrate"). Each of the objections, however, are addressed in turn.

A. First Objection

In total, Morgenthaler's first objection states: "Plaintiff Gaye Morgenthaler's First Amended Complaint [ECF No. 8] demonstrated a pattern and practice of conspiracy and fraud by public officials in the town of Chelsea, MI." ECF No. 39, PageID.245. This objection is not specific and fails to direct the Court to the portion of the magistrate judge's recommendation that she believes was erroneous. Regardless, the general deficiency Judge Altman identified in

Morgenthaler's complaint was not the substance of her allegations concerning wrongdoing by Chelsea leaders.  At the pleading stage, all of the plaintiff's factual allegations must be taken as true, *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020), and Judge Altman viewed Morgenthaler's statements in that light, *see* ECF No. 38, PageID.230.  The overarching problem that Morgenthaler has failed to address is that she did not connect the allegations to any legal cause of action that would permit her to obtain judicial relief from the alleged problems in Chelsea that she attempts to describe in this lawsuit.

Morgenthaler's first objection will be overruled.

### B. Second Objection

Morgenthaler next objects that "[w]hoever forbade Chelsea Police Officers to speak with the Plaintiff appears to have committed witness tampering," and cites the witness tampering statute in the federal criminal code, 18 U.S.C. § 1512.  To the extent this objection is an attempt to raise a new claim, it is not properly before the Court.  *See Murr*, 200 F.3d at 902 n.1.  And as Judge Altman emphasized, Morgenthaler cannot attempt to enforce federal criminal statutes in a civil suit.  *Booth v. Henson*, 290 F. App'x 919, 920-21 (6th Cir. 2008) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))).  Unless specifically designated, criminal statutes do not create private causes of action, *see Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994), and none of the statutes Morgenthaler specifically invoked provide private causes of action, *see United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003).

Morgenthaler's second objection will be overruled.

### Third and Ninth Objections

In her third objection, the plaintiff states, "To say that a citizen has no 'standing' to file a lawsuit when Defendants are taking our tax money and committing obvious fraud reeks of

'taxation without representation.' Every town has its issues but the fact that *an ordinary citizen like me filed a lawsuit begging the federal judiciary for help* tells you just how corrupt my town must be." ECF No. 39, PageID.246.  Morgenthaler's ninth objection raises a similar concern, arguing that she should be able to file a lawsuit as a taxpayer on behalf of police officers who cannot file a lawsuit on their own because of the prospect of retaliation.

Morgenthaler's dissatisfaction as a taxpayer with her local government has a familiar ring, but Judge Altman's construction of the amended complaint as a challenge to the City of Chelsea's expenditures on various reports and task forces concerning its police force leads ineluctably to the conclusion that Morgenthaler did not have standing to vindicate that quarrel in federal court.  The magistrate judge's conclusion is based on longstanding constitutional principles articulated by the Supreme Court.

Article III of the U.S. Constitution, which sets out the authority of the federal courts, allows those courts to adjudicate only actual "Cases" and "Controversies."  U.S. Const. Art. III, § 2.  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case — in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  The Supreme Court has characterized the standing doctrine as "part of the basic charter promulgated by the Framers of the Constitution at Philadelphia in 1787," and has said it promotes the separation of powers.  *United States v. Texas*, 599 U.S. 670, 675 (2023) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 476 (1982)).  To establish standing, a plaintiff must demonstrate that she has suffered an actual or imminent, concrete and particularized injury; that injury must be fairly traceable to the conduct of the defendants; and it must be likely that a favorable judicial decision would offer relief.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Although this articulation of the doctrine would

- 10 -

appear to countenance a broad array of lawsuits, the Supreme Court has explained that certain alleged injuries are categorically incapable of creating standing.  Relevant here, the Court has explained that "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006).  The major exception to this general rule is an allegation that congressional spending legislation violates the First Amendment's Establishment Clause, *Flast v. Cohen*, 392 U.S. 83, 105-06 (1968), but this is not an issue here.

Morgenthaler does not explain why Judge Altman's conclusion that she lacked standing to pursue any claim related to the City's spending priorities was incorrect or otherwise offer a different standing theory.  Her reference to the concept of "taxation without representation" is particularly inapt.  As a resident of the City, Morgenthaler can vote in its municipal elections.

Nor is Morgenthaler's suggestion that the police officers might be intimidated from bringing their own lawsuits sufficient to raise claims on their behalf (though it is doubtful that the amended complaint could be construed to plead such a claim).  "Generally, plaintiffs cannot establish standing based on the legal rights or interest of others." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021)).  "To establish such third-party standing absent statutory authorization, plaintiffs must show both that they have a close relationship with the person that possesses the right and that some 'hindrance' limits that person's ability to assert it." *Digital Media Sols., LLC v. S. Univ. of Ohio, LLC*, 59 F.4th 772, 782 (6th Cir. 2023) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)) (cleaned up).  But Morgenthaler does not describe any close relationship she has with any officers that would allow her to pursue any claims they may have.  And she has identified no substantial legal hindrance to the officers' ability to assert

their own rights.  Any retaliation an officer experienced itself could be grounds for a claim.  *See*
*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).

Morgenthaler's third and ninth objections will be overruled.

Fourth Objection

In her fourth objection, Morgenthaler contends that the magistrate judge incorrectly determined that her claims against the SMART program, housed within Eastern Michigan University, were barred by sovereign immunity because sovereign immunity does not apply to government entities that engage in corporate activities.  As background, SMART brought its motion to dismiss under Rule 12(b)(1), asserting that the plaintiff's claims should have been brought against the Eastern Michigan University (EMU) Board of Regents and therefore were barred by sovereign immunity.  Judge Altman adopted this argument, explaining that under Michigan Compiled Laws § 390.555 and Article 8, Section 6 of the Michigan Constitution, EMU's Board of Regents acts as SMART's controlling party with the capacity to sue and be sued. Morgenthaler resists this conclusion; she maintains that SMART is not entitled to sovereign immunity because the doctrine should not protect public universities when they engage in corporate activities.  Here, she contends, SMART operates like a commercial consulting firm instead of a university.  She states that the faculty members are not teaching EMU students, are not on EMU's campus when they offer trainings to police officers, and were paid $25,000 for the training sessions.

A motion to dismiss on the ground that sovereign immunity bars the plaintiff's claims properly is treated as a motion to dismiss for lack of subject matter jurisdiction under Civil Rule 12(b)(1).  *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006). The entity asserting that it is entitled to sovereign immunity bears the burden to establish its immunity.  *Guertin v. State*, 912 F.3d 907, 936-37 (6th Cir. 2019).  Generously construed,

Morgenthaler's amended complaint could be read to suggest that SMART was not a state entity. However, SMART's motion to dismiss cited several facts suggesting that it was an entity within Eastern Michigan University. *See* ECF No. 20, PageID.196-97. Had Morgenthaler responded to this motion, it might have been appropriate to conduct fact finding as to SMART's legal status. But Morgenthaler never filed a response, and her objection appears to concede that SMART is housed within the University. That is fatal to her argument because the Sixth Circuit has held that Michigan's public universities are departments of the state and thus enjoy immunity from suit under the Eleventh Amendment. *Estate of Ritter v. Univ. of Michigan*, 851 F.2d 846, 850-51 (6th Cir. 1988); *see also Harris v. Morris*, No. 16-11162, 2017 WL 9476832, at *3 (E.D. Mich. Feb. 8, 2017) ("Eastern Michigan University is a public university, the creation and governance of which is enshrined in the Michigan Constitution."). Finally, the only case Morgenthaler cites in support of her argument, *Regents of the University of Minnesota v. LSI Corporation*, is unhelpful to her cause. In that case, the United States Court of Appeals for the Federal Circuit held that sovereign immunity did not bar *inter partes* review proceedings before an administrative agency. 926 F.3d 1327, 1341 (Fed. Cir. 2019). That holding, which did not concern Article III adjudications, has little apparent applicability here.

In any event, even if Morgenthaler sued the correct entity — the Eastern Michigan University Board of Regents — her claim could not succeed because it would be barred by the Eleventh Amendment. The Supreme Court has explained on a number of occasions that under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Emps. v. Missouri Pub. Health & Welfare Dep't*, 411 U.S. 279, 280 (1973) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890); *Duhne v. New Jersey*, 251 U.S. 311 (1920); and *Parden v. Terminal Ry. Co.*, 377 U.S. 184 (1964), *overruled on*

- 13 -

other grounds by *Coll. Sav. Bank v. Florida Prepaid Post–Secondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)).  The Eastern Michigan University Board of Regents is a department of the state and thus enjoys immunity from suit under the Eleventh Amendment. *See Estate of Ritter v. Univ. of Michigan*, 851 F.2d 846, 850-51 (6th Cir. 1988).  It is true that the Amendment "does not preclude a suit against [state official defendants named in their official capacities] for prospective injunctive relief."  *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000) ("The district court correctly determined that the Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983.")); *see also Ex parte Young*, 209 U.S. 123, 159 (1908).  So a plaintiff can "avoid[] this sovereign immunity bar by suing for injunctive or declaratory relief, rather than monetary relief."  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 n. 1 (6th Cir. 2004) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989)).  And according to her amended complaint, Morgenthaler seeks only an "injunction to halt this fraud" and the appointment of a "magistrate to clean out the corruption in Chelsea." Am. Compl., ECF No. 8, PageID.38.  Both requests are injunctive in nature.  However, SMART points out correctly that Morgenthaler failed to name a state official as a party, a prerequisite for the *Ex parte Young* doctrine to apply.  *Proctor v. Bd. of Med.*, 718 F. App'x 325, 328 (6th Cir. 2017).  More fundamentally, she has not clearly identified what violation of federal law any state defendant has or threatens to commit against her.

Morgenthaler's objection does not suggest that the magistrate judge erred in holding that her claims against SMART were barred by Eleventh Amendment sovereign immunity.  Her fourth objection will be overruled.

Fifth, Sixth, and Seventh Objections

Morgenthaler's fifth, sixth, and seventh objections all focus on Judge Altman's recommendation that her motion for a preliminary injunction — which sought an order prohibiting the defendants from forbidding Chelsea police officers from speaking with her and from committing any further actions related to the Public Safety Strategic Planning group — be denied. Generously construed, Morgenthaler's objections assert that 1) she and other residents are suffering irreparable harm because of the City's treatment of its police officers; 2) the harm to an individual's First Amendment rights is the determining factor in the irreparable harm inquiry; and 3) the public interest favors injunctive relief.  Her arguments are not persuasive.

Judge Altman analyzed separately both remedial measures sought by Morgenthaler.  On the first request, she observed that injunctive relief is generally inappropriate where a complaint's underlying allegations are unrelated to the relief sought.  As Judge Altman explained elsewhere in her report, the legal claims underlying Morgenthaler's amended complaint are not clear, but she broadly proceeds on a theory that the municipal defendants mismanaged the City and its police department.  The nature of any rights violation remains ill-defined.  Morgenthaler's motion for a preliminary injunction, however, seeks an order barring the defendants from interfering with her communications with the community's police officers.  This is not directly connected to the allegations in her complaint.  "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  To the extent that she could amend her complaint to allege that certain individuals prevented police officers from speaking with her, she makes plain in her motion for a preliminary injunction that the rights violation she wishes to address is not premised on any infringement of her own First Amendment rights but the rights of the officers

with whom she wishes to speak.  *See* ECF No. 31, PageID.174.  And Morgenthaler does not have

standing to assert any claims of Chelsea police officers for the reasons explained above.  She also

has not come forward with any evidence, by affidavit or otherwise, that such a direction ever was

given by any defendant.

Regarding Morgenthaler's request to enjoin all Public Safety Strategic Planning Group

work, Judge Altman emphasized that her claims had no likelihood for success on the merits, she

had not shown irreparable injury because the alleged harms are speculative, and the public interest

favors the government.   Morgenthaler's objections do not suggest that this conclusion was

erroneous.  None of her objections suggest that her claims have any likelihood of success on the

merits, let alone a strong likelihood.  "[A] finding that there is simply no likelihood of success on

the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir.

2000).  One of her objections appears to suggest that irreparable harm may more readily be found

because her complaint dealt with violations of her First Amendment rights.  True, "the Supreme

Court has long held that '[t]he loss of First Amendment freedoms, for even minimal periods of

time, unquestionably constitutes irreparable injury.'" *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir.

2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  But none of the allegations in the

plaintiff's complaint describes any injury to her First Amendment rights as a result of the Public

Safety Strategic Planning Group's actions.   She alleges that the Group has violated various

Michigan open meetings laws, but that is a question of state, not federal law.  Moreover, the only

First Amendment claim Judge Altman found plausible involved defendant Eyster, a member of

the Chelsea School Board, and even that claim was legally deficient, a conclusion to which

Morgenthaler does not now object.

Finally, Morgenthaler asserts that the public interest favors injunctive relief because the protection of constitutional rights serves the public interest.  However, the fact that Morgenthaler has shown no likelihood of success on the merits of her claims, much less any irreparable injury, means that the Court need not consider the remaining factors.  *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." (quoting *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

Morgenthaler's fifth, sixth, and seventh objections will be overruled.

Eighth and Tenth Objections

Morgenthaler's eighth and tenth objections concern Judge Altman's recommendation that her motion for leave to amend her amended complaint be denied.  Judge Altman reasoned that Morgenthaler's assertion that she would "specify the Defendants' guilt claim by claim" was insufficient to demonstrate that an amended complaint would be anything other than futile. Morgenthaler objects to this conclusion, arguing principally that she is still gathering facts for an amended complaint but has been hindered because the police officers have been forbidden from speaking with her and that Judge Altman is "prejudiced" against her.  These objections are unpersuasive.

In this district, when a movant files a motion for leave to amend, she must file a proposed amended complaint with her motion.  *See* E.D. Mich. LR 15.1.  The "[f]ailure to comply with [Local Rule 15.1] is not grounds for denial of the motion." E.D. Mich. LR 15.1.  But a movant's failure to comply with this rule has the practical effect of making it exceedingly difficult for the Court to evaluate whether it is appropriate to grant a party's request for leave to amend.  In her motion, Morgenthaler acknowledges the deficiencies in her initial pleadings, particularly her failure to link her claims to each defendant.  She states, without further elucidation, that her

proposed amendments "would simply include the claims upon which I'm relying."  ECF No. 26, PageID.132.  However, she also suggests that her failure to include this information previously was intentional, motivated by "[her] faint hope that many Defendants would resign, depart and sin no more."  *Id.* at PageID.130; *see also id.* at PageID.129 (explaining that she "deliberately didn't specify the Defendants' guilt claim by claim . . . . If the Defendants all resigned — as Defendant Eyster did three weeks ago — and swore they would never hold public office again, this lawsuit would be done.").

If true, Morgenthaler's statement that she intentionally did not adequately plead her claims in her initial or amended complaint so that the defendants would resign their positions may itself be cause to deny her leave to amend because such litigation tactics would be indicative of bad faith.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend is appropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant").  The purpose of a court is to provide aggrieved parties an opportunity to be heard and have the merits of their claims evaluated impartially.  A lawsuit is not a means to coerce an opposing party into resigning from office.

Regardless, Judge Altman held that Morgenthaler was not entitled to amend her complaint because such an amendment would be futile.  Morgenthaler's objections do not suggest that that conclusion was erroneous.  She still has not explained adequately how another amended complaint would address the problems identified in each defendants' motion to dismiss and in Judge Altman's report and recommendation.  A district court does not abuse its discretion when it denies a bare-bones request to amend a pleading.  *See Crosby v. Twitter, Inc.*, 921 F.3d 617, 628 (6th Cir. 2019); *Scrap Yard, LLC v. City of Cleveland*, 513 F. App'x 500, 507 (6th Cir. 2013).  Morgenthaler did state that the amendment would connect the parties to her claims, but Judge Altman found that

this alone would be insufficient because Morgenthaler must also connect her allegations to her claims in order to plead them adequately, and the claims Judge Altman could divine from Morgenthaler's submission all were legally inadequate.  Morgenthaler provides no indication that she could submit an amended complaint that can address these legal errors.  Instead, her objections primarily cast blame on the defendants; she maintains that she is unable to connect her allegations to her claims because Chelsea police officers have been forbidden to speak with her.  The fundamental problem with Morgenthaler's present allegations, however, is not a lack of evidence; it is that she has not identified a legal basis for her to obtain redress from a federal court for the issues she perceives in her community.

Likewise without merit is Morgenthaler's argument that Judge Altman's use of the phrase "bald assertion" in her report and recommendation suggests that she is prejudiced in this matter. It appears that Judge Altman used the phrase to characterize Morgenthaler's statement that an amended complaint would "connect the parties to her claims."  To the extent that Morgenthaler finds in this phrasing evidence of prejudice, her concern is not warranted.

The word "bald" does not solely connote a hairless head; among legal practitioners, it frequently is used in its figurative sense to suggest that a statement or contention "lack[s] adornment or amplification."  *See Bald*, *Merriam-Webster Dictionary* (2024); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical.").  Bald is a word of emphasis but not of insult and is here an apt description of Morgenthaler's motion for leave to amend her complaint, which, as discussed above, never adequately explained how an amended pleading would address the deficiencies.  In any event, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias

or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). The record here does not demonstrate any favoritism or antagonism on behalf of the magistrate judge. This objection is without merit.

Morgenthaler's eighth and tenth objections will be overruled.

\* \* \* \* \*

The plaintiff also named thirty John Doe defendants in her amended complaint, but she has not attempted to identify them or effectuate service of process. If a defendant is not served within 90 days after a complaint is filed, the Court must dismiss the action or order service within a specified date. Fed. R. Civ. P. 4(m). The plaintiff took no steps in her amended complaint to identify the John Does, and her pleadings show no prospect of tying any of the anonymous defendants to her factual allegations. The proper exercise of discretion is to dismiss the action as to these unnamed defendants as well. *Wise v. Dep't of Def.*, 196 F.R.D. 52, 54-57 (S.D. Ohio 1999) (holding that absent good cause, courts have discretion under Rule 4(m) to either extend the deadline or dismiss the action without prejudice).

### III.

The magistrate judge correctly concluded that the plaintiff failed to plead viable claims against the defendants. The Court also agrees that any further proposed amendments to the plaintiff's pleadings would be futile. Finally, because the plaintiff has no chance of success on the merits of her claims, she is not entitled to a preliminary injunction. The plaintiff's objections to the magistrate judge's report and recommendation do not have merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation issued (ECF No. 38) is **ADOPTED**, and the plaintiff's objections (ECF No. 39) are **OVERRULED**.

It is further **ORDERED** that the defendants' motions to dismiss (ECF No. 14, 20, 22) are **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for leave to amend her complaint (ECF No. 26) and her motion for a preliminary injunction (ECF No. 31) are **DENIED**.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 3, 2024